408 So.2d 1322 (1982)
Juanita McDonnieal ADAMS
v.
Henry Earl ADAMS, Sr.
No. 81-C-2266.
Supreme Court of Louisiana.
January 25, 1982.
*1323 Jake Shapiro, Alexandria, for defendant-respondent.
William H. Ledbetter, Elizabeth Erny Foote of Trimble, Randow, Percy, Smith, Wilson & Foote, Alexandria, for plaintiff-applicant.
CALOGERO, Justice.
Plaintiff seeks a divorce from her husband, based upon her having lived separate and apart from him continuously for more than one year. She contends that under La.R.S. 9:301 she is entitled to a judgment of divorce notwithstanding that her husband was committed to a mental institution on the first day of the separation and has remained there ever since.
The trial court and the Court of Appeal denied plaintiff a divorce upon their construction of the jurisprudence which has in past years applied the essentially identical divorce statute to continuous separation periods where one of the spouses has been insane or committed.
For the reasons which follow, we determine that she is entitled to a judgment of divorce.
The parties were married on February 29, 1948. They lived together until July 22, 1977, although not without substantial turmoil in the latter years. Plaintiff testified that during the last ten years of the marriage, defendant frequently exhibited irrational behavior, characterized by extreme verbal abuse and threats of physical violence directed toward family members. She further testified that defendant frequently threatened her with a machete which he kept in their home. The record shows that in May of 1974 defendant was hospitalized at Central Louisiana State Hospital in Pineville for treatment of mental illness. Defendant remained hospitalized for approximately a month and was released in June of 1974. In March of 1977, defendant was again hospitalized for psychiatric treatment at the Springfield, Missouri, Federal Psychiatric Hospital after threatening to injure a United States postal worker. Following his release from that facility in May of 1977, defendant was placed on federal probation for an eighteen month period in connection with that incident.
With regard to the events which culminated in Mrs. Adams' leaving the matrimonial domicile, she testified that on the night of July 21, 1977, defendant was belligerent and verbally abusive toward her. At that time, the parties' son was in Shreveport and defendant demanded that plaintiff order their son to return home immediately. She testified that she tried to placate the defendant and he eventually went to bed. The next morning, she stated, defendant arose and again began verbally abusing her and demanding that their son be ordered to return home. At that point, defendant grabbed and choked the defendant and threatened her with the machete. When she was able to escape, Mrs. Adams fled from the home and went to her sister-in-law's house next door. Defendant pursued plaintiff, but when he could not get into his sister's house, he returned home.
Plaintiff contacted defendant's federal probation officer, Timothy Harrison, seeking his advice as to the best way to handle the violent domestic situation. She told the probation officer at that time of her intent to separate permanently from her husband. Harrison suggested that she remain at her sister-in-law's house until he might have an opportunity to speak with defendant and *1324 evaluate his mental condition. Harrison testified that plaintiff had asked him how she might get her personal belongings from the house as she intended to leave her husband permanently. He also stated that plaintiff did not at that time make any specific request that defendant be hospitalized. Harrison later contacted defendant at his office, and after speaking with defendant determined that some affirmative action had to be taken to protect plaintiff and her family from defendant's violent conduct. Harrison then contacted the coroner's office for information concerning the procedure for an emergency commitment. After obtaining the information, Harrison contacted plaintiff and recommended that she sign formal commitment papers to have her husband committed. On that same day, July 22, 1977, defendant was taken to Central Louisiana State Hospital. Plaintiff and defendant have not lived together since then.
About seven months later, on February 21, 1978, plaintiff filed suit for separation from bed and board alleging cruel treatment as a ground. That lawsuit apparently did not proceed to judgment.
On January 30, 1980, some two and one-half years after the initial physical separation, Mrs. Adams filed suit for divorce on the grounds that the parties had been living separate and apart continuously for more than one year. Defendant through counsel filed exceptions of no right of action and no cause of action. Both exceptions were referred to the merits. After trial on the merits, the court ruled in favor of defendant, denying plaintiff a divorce on the grounds that defendant was insane at the time of the initial separation, and that under La.R.S. 9:301 and the interpretive jurisprudence, it is necessary that the trial judge find that both parties were sane at the time of the initial separation. The Court of Appeal affirmed the trial court ruling for the same reasons, relying upon Galiano v. Monteleone, 178 La. 567, 152 So. 126 (1933), Ridell v. Hyver, 215 La. 358, 40 So.2d 785 (1949) and Clark v. Clark, 215 La. 835, 41 So.2d 734 (1949). We granted writs to review the lower court judgments and the jurisprudence in this area of the law.
La.R.S. 9:301 provides:
When the spouses have been living separate and apart continuously for a period of one year or more, either spouse may sue for and obtain a judgment of absolute divorce.
Plaintiff argues that this statute only requires that the parties live apart for a period of one year; that it does not require that the separation be voluntary, or that both parties be sane at the outset of the separation, or thereafter.
Defendant on the other hand argues that the separation contemplated by the statute is a voluntary one, and that a litigant does not prove that the separation was voluntary where the separation commences because of the insanity and/or institutional commitment of one of the parties.
Under defendant's interpretation of the statute (and because there is no statutory provision in Louisiana permitting a spouse to obtain a divorce on the grounds of the other's insanity), it would be impossible for a married person to obtain a divorce once his spouse has exhibited such behavior that he or she might be considered insane by the trial judge. In contrast, where both parties to the marriage are sane, either may choose, against the will of the other, to live separate and apart continuously for one year and thereby establish the right to a divorce under La.R.S. 9:301. In the case of the couple where one of the spouses is afflicted with mental illness, the healthy spouse is denied the right to secure a divorce, a right he or she would otherwise have but for the mate's mental condition.
Under plaintiff's interpretation of the statute, a couple forced or prompted to live apart because of a work assignment, military service or such, without any intention on the part of either spouse to put an end to the marital association, could obtain a divorce *1325 if the physical separation continues for one year.
After considering the statute, La. R.S. 9:301, the apparent Legislative intent in enacting it, the jurisprudence, and the arguments of the parties, we determine that neither party's position is fully correct. For the reasons which follow we believe that the "living separate and apart" contemplated by La.R.S. 9:301 must be voluntary on the part of at least one of the parties (even though the statute does not specifically so provide), and continuous for a period of one year. The commencement of that year only begins when a spouse evidences an intent to end the marital association. The insanity of the other, coincident with or subsequent to the outset of the couple's physically living separate and apart is not necessarily determinative.
In searching for the Legislative intent in enacting La.R.S. 9:301, we have found that the Legislature has amended the statute on several occasions, changing the required period for living separate and apart without changing the essential words of the statute,[1] notwithstanding the interpretation which has been placed upon it by this Court from time to time. Therefore, in ascertaining the intent of the Legislature in enacting the statute as last amended in 1979, and in interpreting and applying it, we feel that a review of the prior jurisprudence and an interpretation in keeping with the decided cases of this Court, to the extent possible, is necessary.
The first case to address this issue was Vincent v. LeDoux, 146 La. 144, 83 So. 439 (1919). In Vincent, the Court considered the meaning of the words "living separate and apart" contained in Act No. 269 of 1916 (that statute required a separation period of seven years). In that case the parties had physically separated in 1911. Thereafter, in 1914, Mr. Vincent's wife was interdicted. In defense to the divorce proceeding brought by Mr. Vincent, defendant contended that the separation contemplated by the statute was a voluntary one, and that the separation could not be voluntary while one of the parties was of an insane mind. The Court disagreed, and observed that the Legislature, in enacting the statute, had determined that it was "prejudicial to the interests of society and of the parties themselves that married persons who live separate and apart should be held in their bonds and denied the right to choose other mates...." The Court specifically held that the separation contemplated by the statute did not have to be with the acquiescence of both spouses, that the intention of Mr. Vincent to terminate the marital association was clearly evidenced by the fact that the separation took place three years before his wife's mental deterioration, and that neither the commencement nor the running of the statutory period was precluded or interrupted by the mental condition of Mrs. Vincent.
The next opinion of the Court to address the issue was Artigues v. Lalande, Sup.Ct. No.26752, (La.1925). That opinion was rendered on June 22, 1925, but while the case was pending on application for rehearing, one of the parties died and the case was dismissed on the survivor's motion. The Court decision was thus not final and the opinion was not published. We discuss this case nevertheless because it has been repeatedly cited and relied on in later cases as being contrary to Vincent. Artigues, like Vincent, was concerned with the proper application of Act 269 of 1916. In Artigues, the separation started when the wife was *1326 committed to a mental institution. There was no intent expressed by Mr. Artigue prior to, coincident with or subsequent to the commitment to put an end to the marital association, at least not until he filed the suit for divorce. To the contrary, throughout the wife's confinement, the husband made regular visits, took her off the grounds on outings and constantly sent her presents. Unlike in the Vincent case, Mr. Artigues was not living separate and apart from his wife with the intention of ending the marital association. In finding that the Artigues case was distinguishable from Vincent and that Mr. Artigues was not entitled to a divorce, the Court held that "by `living separate and apart' the statute means a living separate and apart under circumstances which show that the parties have separated, or that one of them has abandoned or left the other."
In Levegue v. Borns, 174 La. 919, 142 So. 126 (1932) the Court relied on Artigues to deny plaintiff a divorce where, like in Artigues, the separation was initiated by the commitment of the wife and there were no circumstances showing that the husband therein had ever "abandoned" his wife. The Court held that the statute did not authorize the granting of a divorce "where for that reason alone [separation because of commitment to a mental institution] the husband has not been living under the same roof with her." (Emphasis provided).
In Galiano v. Monteleone, 178 La. 567, 569, 152 So. 126 (1933) the Court erroneously determined that Artigues and Levegue had overruled Vincent, and held that the husband could not obtain a divorce under Act No. 31 of 1932 (that statute required a separation period of four years) because the physical separation commenced upon the wife's commitment to a mental institution, notwithstanding that the husband had evidenced his intent to terminate the marital association by filing suit for separation from bed and board one month after the commitment. Contrary to Galiano's assertion, Artigues and Levegue had not overruled Vincent. The facts of Artigues and Levegue were found in those cases distinguishable from the facts in Vincent. Excluding Galiano, the prior cases can be consistently read as requiring that the separation must be with the intent of terminating the marital association, and that a physical separation alone is not sufficient.
This Court, in the next case to address the issue, noted the essential distinction between separations which, at their outset and/or throughout, are without an expressed intent to sever the marital relationship, and those that are with such intent. Ridell v. Hyver, 215 La. 358, 40 So.2d 785 (1949).
In Ridell, this Court reversed the two lower courts and held that Mrs. Ridell's petition did state a cause of action against her husband for divorce on the grounds of living separate and apart continuously for two years under Act No. 430 of 1938 (the statute required a separation period of two years) where the parties separated in June of 1935 and the husband was not committed until March of 1936. The Court held that the separation contemplated by the statute was one which "must be with the intention of at least one of the parties to live separate and apart, or because one of the parties, with or without the acquiescence of the other, intends to discontinue and sever the marital relationship." In the course of the opinion, Ridell noted that although Galiano had said that the ruling in Vincent was unsound, Vincent was, rather, distinguishable from the other cases.
Finally, in Clark v. Clark, 215 La. 835, 41 So.2d 734 (1949), the Court followed the Artigue, Levegue and Galiano cases in holding that plaintiff's petition did not state a cause of action for divorce based on the grounds that the parties had lived separate and apart continuously for two years where there was no allegation by the plaintiff of an intent to end the marital relationship at the outset of the separation or thereafter, rather only that the parties had lived apart because of the wife's continuous confinement *1327 in a mental institution. However, the Court there restated the holding of Ridell, quoting therefrom, "[i]t (the separation) must be with the intention of at least one of the parties to live separate and apart, or because one of the parties, with or without the acquiescence of the other, intends to discontinue and sever the marital relationship."
The common thread that runs through all of the above cases, with the sole exception of Galiano, such that they are in harmony, is that the separation contemplated by the statutes must be a voluntary one on the part of at least one of the parties, with voluntariness being established when one party evidences his or her intent to put an end to the marital association. Evidence that the parties have not resided under the same roof for the statutorily required period, without more, is not sufficient to obtain a divorce under the statute. We affirm this prior interpretation of the statute and further clarify it by adding that from the point in time that a party evidences an intention to terminate the marital association, when coupled with actual physical separation, the statutorily required separation period begins to run. And that is so regardless of the cause of the initial physical separation. To the extent that Galiano, supra, is inconsistent with these views, that case is overruled.
This interpretation of La.R.S. 9:301, or more particularly what is meant by the words "living separate and apart", coincides with the interpretation given in the military separation cases. Otis v. Bahan, 209 La. 1082, 26 So.2d 146 (1946).
In Otis, supra, the husband left the matrimonial domicile to go into the service on January 3, 1943. At that time, the wife lived with her mother-in-law (the matrimonial domicile) where she remained until May of 1943, at which point she left her mother-in-law's home and began living elsewhere. The husband filed suit for divorce in February of 1945 on the grounds that the parties had lived separate and apart for two years. The husband contended that he had received a letter from his wife on January 10, 1943 two years and one month before he filed the divorce suit, in which she stated that she no longer wanted to remain married to him. However, he was unable to produce that letter. The trial court dismissed the husband's suit. This Court affirmed the lower court ruling stating: "The separation intended by the statute is a separation by which the marital association is severed.... The separation must be with the intent of the married persons to live apart because of their mutual purpose to do so, or because one of the parties with or without the acquiescence of the other intends to discontinue the marital relationship."
Applying that interpretation of the statute to the facts before it, the Court held that the separation initiated when the husband was inducted into the service was not such as was contemplated by the statute. However, the Court implied that had plaintiff been able to produce the letter his wife allegedly sent him, telling him that she no longer wished to remain married to him, the two year period would have commenced running from that date and he would have been entitled to a divorce. The Court noted that the separation period did commence when the wife left her mother-in-law's house and began residing elsewhere, thereby evidencing her intent to sever the marital association. (This was of no help to plaintiff because that had not taken place a full two years before the suit was filed). So, while the Court held that the outset involuntary separation (military induction) would not start the living separate and apart period, it nonetheless determined, perhaps in dicta, that the period can commence during the same separation period at such time as one of the parties clearly indicates an intention to sever the marital association.
In the case before us, plaintiff, Mrs. Adams, left the matrimonial domicile on the *1328 morning of July 22, 1977. She testified that at the time she left she was intending to separate from her husband permanently. She stated that she told that to her husband's probation officer, Mr. Harrison, and that she also told that to her sister-in-law. Mr. Harrison confirmed plaintiff's testimony on this point. He stated that Mrs. Adams told him that she feared for her life and that she was never going back with her husband. Mr. Adams was committed to Central Louisiana State Hospital that afternoon. Thereafter, plaintiff returned to live in their home since the husband was confined elsewhere.
In further support of Mrs. Adams' resolve to sever the marital association the record shows that she filed suit against her husband for a separation from bed and board on February 21, 1978 just seven months after the parties separated and almost two years before the present divorce suit was filed. Mrs. Adams also testified that she was contacted by the hospital regarding whether she would want or would allow her husband to come home for weekend visits, and she informed them that she did not want him to come home and would not allow him to stay with her. While there are no dates in the record regarding these discussions between Mrs. Adams and the Central Louisiana State Hospital personnel, the record does show that she had a similar conversation with Judge Humphries in January of 1979, more than one year before she filed the instant suit.
In the case before us, the preponderance of the evidence supports plaintiff's contention that when she left her husband on July 22, 1977 it was with the intention of severing the marital relationship. As we interpret the statute and view the relevant cases, the voluntary separation on her part was sufficient to start the one year living separate and apart period. This is so notwithstanding that on that same day Mr. Adams was committed because of a serious mental condition. And, if the one year period did not start running at this point, it certainly did when Mrs. Adams filed the separation suit, well over one year before she instituted this divorce proceeding.
Therefore, we hold that plaintiff's petition does state a cause of action for divorce based on the grounds that the parties have continuously lived separate and apart for one year, her evidence supports a judgment of divorce in her favor and plaintiff's suit was erroneously dismissed below after trial on the merits.

Decree
For the foregoing reasons, the judgment of the Court of Appeal affirming the dismissal of plaintiff's suit is reversed and there will be judgment in favor of plaintiff, Mrs. Juanita Adams, and against defendant, Mr. Henry Adams, granting her an absolute divorce.
REVERSED AND RENDERED.
DIXON, C. J., subscribes to the majority opinion and adds concurring reasons.
WATSON, J., concurs in the result.
DIXON, Chief Justice, subscribes to the opinion and adds concurring reasons.
I respectfully note that I subscribe to the court's opinion, in spite of its mention of "insanity," because it appears that defendant was neither interdicted nor "notoriously insane" and was, therefore, not incapable of standing in judgment. Either case would present a different factor not present in this case.
NOTES
[1] The statute was originally enacted by Act No. 269 of 1916. It required a seven year separation period, but was otherwise essentially the same as La.R.S. 9:301. The statute was first amended by Act No. 31 of 1932 requiring a four year separation period. It was amended by Act No. 430 of 1938 requiring a two year separation period. It was amended by Act No. 31 of 1960 retaining the two year separation period but making other amendments not relevant to this discussion. It was last amended by Act No. 360 of 1979 requiring a one year separation period.