997 So.2d 882 (2008)
Angela HUBBARD, Plaintiff-Appellant,
v.
AP3 INVESTMENTS, LLC d/b/a Quiznos Sub, Defendant-Appellee.
No. 43,673-CA.
Court of Appeal of Louisiana, Second Circuit.
November 19, 2008.
*883 Richard L. Fewell, Jr., for Appellant.
Perkins & Associates, L.L.C. by Mark A. Perkins, Shreveport, Trent P. Roddy, for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
In the early evening on June 22, 2005, Angela Hubbard and a friend, Lakesia Goldsberry, entered a Quiznos restaurant located in Monroe. Hubbard alleged that as she walked into the restaurant, she tripped on a wrinkled rug located at the entrance, and was injured when she fell.
Hubbard filed suit on June 19, 2006, against the restaurant's owner, AP3 Investments, LLC d/b/a Quiznos Sub ("Quiznos"). Quiznos filed a motion for summary judgment in which it argued that Hubbard was unable to prove with positive evidence that the alleged wrinkle existed before the fall, and that she could not prove that the alleged wrinkle existed for such a period time that a Quiznos employee would have seen it if exercising reasonable care. The trial court granted the motion for summary judgment, and Hubbard has appealed. The judgment is affirmed.

DISCUSSION
A motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Hubbard's claim for damages is governed by La. R.S. 9:2800.6, which provides, in part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

*884 (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
When a claimant is relying upon constructive notice under La. R.S. 9:2800.6(B)(2), the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081. Mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by La. R.S. 9:2800.6. Robinson v. Brookshires #26, 33,713 (La.App.2d Cir.8/25/00), 769 So.2d 639.
The court in White explained the requirement for proving constructive notice as follows:
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
Id., 699 So.2d at 1084-85.
A plaintiff is not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the fall. Instead, the factfinder can reasonably infer from circumstantial evidence that it is more probable than not that the condition existed for such time prior to the accident that it should have been discovered and corrected. Bassett v. Toys "R" Us Delaware, Inc., 36,434 (La.App.2d Cir. 12/30/02), 836 So.2d 465, writ denied, XXXX-XXXX (La.4/25/03), 842 So.2d 408.
Goldsberry held the door for Hubbard as she entered the restaurant, and Goldsberry followed Hubbard into the restaurant. Hubbard, who was wearing flip-flops at the time, fell forward and landed on her right knee and hands, sustaining injuries. Hubbard guessed that her foot got tangled up in the rug.
Hubbard recalled that after she fell, Goldsberry pointed out to her that the rug was not lying flat on the floor. Goldsberry was unable to straighten out the rug. *885 According to Hubbard, the corners of the rug closest to the entrance were flipped over, and she could see the bottom of the rug. Hubbard noticed a medium-sized wrinkle in the middle of the rug that she believed caught her shoe. She could not be more descriptive when asked to explain what she meant by medium-sized. Hubbard also noticed wrinkles along the rug's rubber edges, which she thought may have been caused by the rug being placed in a dryer.
Hubbard did not see the wrinkles as she tripped, and she did not know if the rug was wrinkled before she entered the restaurant. She conceded that if the rug had been wrinkled before her fall, she did not know for how long. Hubbard believed that the wrinkles were present before she fell because Goldsberry later was unable to straighten out the rug. Hubbard guessed that the corners were flipped over before she walked in, but she could not say that she tripped on an area that was flipped over. Like Hubbard, Goldsberry did not see what Hubbard tripped over, and she could not say that the wrinkles were present before Hubbard fell.
While she was helping Hubbard up, Goldsberry saw that the rug was "puckered up" along the sides. Goldsberry could not recall if these wrinkles were along the side closest to the entrance. She also saw wrinkles in the middle of the rug. She found that she could not make the rug remain flat, a condition that she related to what sometimes happens to an object placed in a washing machine. It was noted by Goldsberry that the corners of the rug closest to the back of the restaurant were flipped over. She was uncertain whether the corners closest to the entrance were flipped over.
Eric Bellflower was working at the cash register at the Quiznos when Hubbard fell. Bellflower was one of two employees present; the other employee was in the back washing dishes. Although other customers were in the restaurant, he did not consider the restaurant to be busy at the time. Bellflower witnessed Hubbard's fall out of the corner of his eye, but he did not see the part of the rug upon which she allegedly tripped.
Bellflower saw a wrinkle near a corner of the rug after Hubbard fell, but did not see it prior to the incident. He described the wrinkle as measuring no more than 1.5 inches high and 3 inches long, and it was near a corner that was closer to the interior of the restaurant than to the door. This was the only wrinkle that he saw, and he straightened the rug to remove the wrinkle after Hubbard had fallen. Bellflower denied that the edges of the rug were turned over; rather, they were square with a little bump near one corner. He did not see any of the corners flipped over, and he did not see the rubber underside of the rug.
Bellflower thought that Hubbard had tripped on a wrinkle in the rug, but he also thought the fall was faked because of the way that Hubbard had caught herself. He also considered it possible that Hubbard had tripped on her own feet. Bellflower found that an empty stool was pushed against the rug after the incident, and he guessed that the customer who had occupied the stool had been gone awhile. It was estimated that 5-10 minutes had elapsed from the time a customer had last entered the restaurant until Hubbard fell. Bellflower speculated that the most likely cause of the wrinkle that he saw was that the stool had been pushed into the rug. He further speculated that it was possible that the wrinkle may not have been caused by the stool, and, in fact, may have been caused by Hubbard's own feet or body when she fell.
*886 The rug at issue was in the shape of a long rectangle. It was essentially a black carpet surrounded by a black rubber edge, and it had a rubber underside. There was another identical rug placed in front of the soda machine. Every evening, the rugs were swept or vacuumed, and then rolled up until the next morning. The rug that was in front of the entrance might wind up in front of the soda machine the next day, and vice versa. Vicki Mangum, who owns the Quiznos restaurant where Hubbard fell, testified that the restaurant's rugs were replaced on a weekly basis by a linen service, which would pick up the soiled old rugs and replace them with clean ones on Tuesdays. The rug at issue had been replaced the morning of the day before the accident.
Mangum stated that the rugs used in the restaurant often had a curled lip, or hump, running along the rubber edge. She estimated the typical hump as measuring half an inch in height and 1.5 to 2 inches in length. She saw a hump consistent with these dimensions on the rug that Hubbard had tripped on; however, she saw this after the incident. The rugs sometimes came in that condition when delivered by the linen service, and Mangum complained to the linen service about this after the accident. Mangum guessed that the rubber was stretched during the cleaning process.
Mangum testified that the little curls or humps did not run from one side of the rug to the other and did not cause bumps in the middle of the rug. The curls were always along the rubber edges, and never in the center of the rug. Mangum, who used to own a flooring business, would not characterize the curls as wrinkles, but described them as being more like a hump or wave on the rubber edge of the carpet. She related that even when an edge was curled up, the rubber backing of the rug could not be seen because the curl was small.
Hubbard's mother visited the store several days after her daughter fell. She saw a rug that may or may not have been the rug at issue, and she saw thumb-high wrinkles throughout it. Hubbard's mother also recalled seeing "puckers" along that carpet's rubber edge, which did not lie flat.
Hubbard did not establish that the rug had wrinkles down the middle or that any of its corners were flipped over for any period of time prior to the incident, much less for a period of time sufficient to place Quiznos on notice of its existence. It is mere speculation on the part of Bellflower that the source of the wrinkle was the bar stool that was in contact with the rug. Bellflower also speculated that Hubbard herself may have caused the wrinkle, and even that Hubbard faked her fall. Although Mangum admitted that the rugs often had small curls along the side, and this rug was in this condition when she viewed it after the fall, she did not see this particular rug in this particular condition before the fall. Moreover, the typical curls described by Mangum were not the wrinkles in the middle or flipped-over corners described by Hubbard and her friend. We also note that no prior customer had tripped or fallen over one of these rugs at the restaurant entrance.
Hubbard has not presented any evidence that she can make a positive showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence. There is also no evidence that Quiznos created or had actual knowledge of the damage-causing condition. Hubbard has not produced factual support sufficient to establish that she will be able to satisfy her burden of proving that Quiznos created or had actual or constructive knowledge *887 of the damage-causing condition. Accordingly, the trial court did not err in granting the motion for summary judgment.

CONCLUSION
At Hubbard's costs, the judgment is AFFIRMED.