DREW, J.
 

 | following the 2006 death of Kathleen Pool Colon, the executor of her estate sought a declaratory judgment that the decedent’s divorce from Richard Colon was legally valid. Richard reconvened, petitioning the court to declare his divorce from Kathleen a nullity. The trial, court denied him any relief, granting a motion for summary judgment in favor of the Executor of the Succession of Kathleen Colon and dismissing all of Richard’s claims. Richard appeals. We affirm.
 

 CHRONOLOGY
 

 11/15/1988 Richard and Kathleen married.
 

 10/18/2005 Kathleen filed a C.C. art. 103 divorce petition against Richard, alleging that they separated 3/1/03 and had never reconciled, a period of time far in excess of 180 days.
 

 10/18/2005 Richard accepted service by affidavit, waiving citation, service of process, legal delays, notice of trial, and appearance at trial.
 

 12/14 or 15/2005 Kathleen executed an affidavit of non-reconciliation.
 

 12/16/2005 The trial court signed a default judgment in favor of Kathleen, granting her a C.C. art. 103 divorce.
 

 12/23/2005 The Caddo Clerk mailed notice of judgment to Kathleen’s lawyer, with the notation that Richard had waived notice. Notice of judgment to Richard was not required. La. C.C.P. art. 1701(B).
 

 2006 Kathleen died.
 

 Late 2006 Richard learned that he would not inherit from Kathleen, pursuant to La. C.C. art. 1608(5).
 

 1/9/2007 Roland McKneely enrolled as counsel for Richard.
 

 
 *306
 
 1/18/2007 Richard, through counsel, filed a motion for a new trial, asserting that he had not waived notice of judgment and that no notice had been sent to him by the clerk. Richard also further alleged that:
 

 |.;(1) Kathleen had been manic-depressive and he believed her to have been noncompliant about taking medication;
 

 (2) When he signed the waiver of notice of suit, he apparently had no reason to believe she lacked mental capacity to sue on that date;
 
 [1]
 

 (3) Only subsequent to the divorce did he learn that commitment proceedings had been filed against her during May of 2005;
 

 (4) This constituted new evidence proving that Kathleen was mentally incompetent to sue for divorce;
 

 (5) He could not have discovered this information with due diligence before the divorce judgment was signed;
 

 (6) Kathleen was mentally incompetent to proceed with the divorce;
 

 (7) He cared for Kathleen, paid her bills, and ran her errands up until her death, although they continued to live separate and apart; and
 

 (8) He did not learn of the divorce judgment until after she died.
 

 2/27/2007 The trial court signed a judgment denying Richard’s motion for a new trial because
 

 (1) it was untimely under C.C.P. art.1974 and because
 

 (2) Richard had waived the dilatory exception of lack of procedural capacity by failing to timely raise the exception prior to confirmation of the default judgment of divorce. La. C.C.P. art. 928.
 

 3/7/2007 The executor of Kathleen’s succession sued Richard, seeking a declaration that the default judgment of divorce obtained by Kathleen was and is valid and legally enforceable.
 

 3/22/2007 Richard reconvened, seeking a judgment declaring the default divorce judgment an absolute nullity because of lack of jurisdiction.
 

 |a« 4/3/2008 The executor filed a motion for summary judgment, requesting that Richard’s demands to annul the judgment be dismissed, predicated upon Richard’s acquiescence in the granting of the divorce judgment.
 

 5/1/2008 The trial court granted the executor’s motion for summary judgment, thereby dismissing all of Richard’s claims which had sought to have the divorce judgment declared a nullity.
 

 5/1/2008 Notice of judgment was mailed by the Caddo Clerk of Court to counsel for both parties.
 

 5/1/2008 Richard filed this appeal.
 

 DISCUSSION
 

 | .[Currently before this court for review is Richard’s appeal from the summary judgment dismissing with prejudice Richard’s demand to have the divorce judgment declared a nullity. In this appeal, Richard argued that his divorce from his deceased ex-wife was invalid because she
 
 *307
 
 was insane and never possessed the requisite intent to divorce. In addition, Richard argued that the default judgment was invalid because no competent evidence was entered to support the default judgment. These arguments are without merit.
 

 |5A motion for summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Hubbard v. AP3 Investments, LLC,
 
 43,673 (La.App.2d Cir.11/19/08), 997 So.2d 882.
 

 That Kathleen suffered from episodes of bipolar disorder which on occasion required hospitalization and for which she took medication is acknowledged by the parties. Her ex-husband’s view is that because she was hospitalized in the months prior to her divorce, she was insane and lacked the mental capacity to obtain a divorce. A competent major has procedural capacity to sue. La. C.C.P. art. 682. La. C.C.P. art. 684 states that a mental incompetent does not have procedural capacity to sue. Comment (c) of art. 684 provides:
 

 (c) This article is declaratory of the prior procedural rules that a mental incompetent has no procedural capacity to sue; and the proper plaintiff to enforce the rights of a mental incompetent is the curator appointed after his interdiction.
 

 Though a mental incompetent not interdicted has no procedural capacity to sue, if the defendant does not timely except thereto, the judgment rendered is not void, but only voidable.
 
 Cf. Vance v. Ellerbe,
 
 150 La. 388, 90 So. 735 (1922). The defendant may protect himself in such a case by challenging the procedural capacity of the plaintiff through the timely filing of the dilatory exception. See Arts. 926 and 928,
 
 infra.
 

 Richard accompanied his wife to her attorney’s office in December 2005 and, at her request, accepted service by affidavit and waived citation, | (¡service of process, legal delays, notice of trial, and appearance at trial. On December 14 or 15, Kathleen signed her affidavit of non-reconciliation in which she averred that she and her husband separated in 2003 and had not reconciled. The default judgment of divorce was signed on December 16, 2005.
 

 According to the executor, Richard learned following his ex-wife’s death that he would not inherit from the decedent and informed the executor that he would seek to have the judgment declared a nullity. The executor for Kathleen’s succession sought a declaratory judgment that the divorce judgment was properly obtained. Richard responded with pleadings in which he sought to have the divorce judgment declared a nullity. The trial court properly rejected Richard’s demand.
 

 Richard waived any complaint about Kathleen’s capacity to bring the suit when he did not object via a dilatory exception of lack of procedural capacity. La. C.C.P. art. 926(A)(6) and (B). The time for filing that exception was prior to the confirmation of a default judgment. La. C.C.P. art. 928. Moreover, a final judgment may not be annulled by a defendant who voluntarily acquiesced in the judgment and who was present in the parish at the time of its execution and did not seek to enjoin its enforcement. La. C.C.P. arts. 2002 and 2003.
 

 Aside from the fact that the record does not show Kathleen to be insane, the cases cited by Richard for the proposition that
 
 *308
 
 separation cannot be voluntary if a spouse is insane are factually distinguishable. In
 
 Cory v. Cory,
 
 395 So.2d 937 (La.App. 2d Cir.1981),
 
 writ denied,
 
 399 So.2d 609 (La.1981), a wife who was reduced to an infantile state by brain deterioration was brought to Louisiana to be cared for by a sister who initiated interdiction proceedings. Prior to that, the husband cared for his wife in California, where the couple had resided for many years. This court found that under those particular circumstances, the husband had not abandoned his wife. In
 
 Ridell v. Hyver,
 
 215 La. 358, 40 So.2d 785 (1949), the husband’s insanity did not bar a divorce. When the parties separated, the husband was sane. Eleven months later, he was hospitalized for mental illness, and years later was interdicted.
 

 The executor correctly argued in brief that Richard was not assisted by reliance on
 
 Parker v. Parker,
 
 95-1373 (La.App. 3d Cir.4/3/96), 671 So.2d 1143. The parties could not receive an immediate divorce under La. C.C. art. 103(1) on proof that they had been living separate and apart continuously for a period of six months or more on the date the petition was filed. The husband’s petition was filed only 3½ months after the parties separated. The
 
 Parker
 
 court concluded that the court did not have jurisdiction to grant a 103(1) divorce.
 

 On the date of the divorce, December 16, 2005, Richard and his deceased ex-wife had been married for over 17 years and had continuously lived separate and apart for two years and nine months. Although Kathleen was hospitalized during that time, there is no proof that Kathleen lacked mental capacity. There is no evidence of interdiction and scant indication from the evidence in the record that Kathleen was so disabled by her bipolar illness that she did not intend to divorce her husband.
 

 [ ^Although Richard engaged in detailed discovery, the only documentation opposing the executor’s motion for summary judgment was Richard’s own affidavit that Kathleen told him as he drove her home from her lawyer’s office that she had to divorce him because she was already married to a Christian singer. The psychiatrist who examined Kathleen’s medical records opined,
 
 based on Richard’s statement about Kathleen’s belief that she was married to another,
 
 that the decedent did not have the mental capacity to understand the nature of what she signed. Richard’s unsubstantiated and self-serving evidence did not support a denial of the summary judgment.
 

 According to Richard, Kathleen was hospitalized because she failed to take her medicine and her condition deteriorated. Apparently, like many living with bipolar illness, she was treatable and functional if she took her drugs. Millions of people in this country have various mental ailments, including bipolar illness; relatively few are insane, requiring interdiction and the resultant loss of capacity to act for themselves. To accept Richard’s argument that the divorce judgment is a nullity would potentially jeopardize thousands of divorces in this state, if one of the parties had ever experienced mental problems.
 

 Richard signed his waiver relative to the divorce, after being with Kathleen for almost two decades, which time period should have been more than sufficient for him to know her better than anyone else in the world. Certainly, he would have been aware of her mental foibles. His signature on |flthe waiver had legal implications and meaning, one of which was his agreement for Kathleen to proceed on the divorce.
 

 Richard alleged that the trial court lacked jurisdiction. We disagree. The trial court was presented with two residents
 
 *309
 
 of Caddo Parish who had, though married, lived separate and apart without reconciliation for 2½ years,
 
 [2]
 
 even though only 180 days was required. Kathleen prayed for the divorce, per La. C.C. arts.103(1) and 103.1(1)(a), and asked Richard to sign a waiver. Richard drove Kathleen to her lawyer’s office, he signed the affidavit, and he then drove Kathleen back to her home. During this time frame when he was in Kathleen’s physical presence, Richard would have been able to assess her intent to divorce him.
 
 [3]
 
 Yet he still filed a general waiver of the proceedings, and for years did nothing to indicate his disinclination to divorce. Without question, the First Judicial District Court had jurisdiction to hear the case and grant the divorce.
 

 Likewise, Richard’s complaint that the default judgment was invalidly entered without competent evidence is without merit. Richard’s assertion that Kathleen’s signed and dated affidavit of non-reconciliation is undated is belied by the document filed into the record. Obviously, the document was signed and notarized on December 14, 2005. The notary apparently erred in writing December 15 and then corrected the date by overwriting the number 14. Regardless of whether Kathleen signed on December 14 or 15, Richard accepted service and waived delays. This Imtie
 
 minim,is
 
 technical error certainly did not somehow void the propriety of the divorce decree, which was granted either one or two days after the signing of the contested affidavit. The trial court correctly signed the default judgment granting the La. C.C. art. 103 divorce.
 

 Richard’s attorney presented detailed, industrious, and interesting arguments to the trial court and to this court. There is nothing in this record evidencing a flaw in the rendering of the default judgment. Thousands of divorces have been granted in this state, utilizing exactly the same documentation and procedure.
 

 This court’s review of the summary judgment dismissing Richard’s attack on the divorce judgment was all that was properly before this court. Richard sought to undo exactly what he facilitated and accepted years ago. The executor was entitled to the summary judgment dismissing Richard’s efforts to nullify the divorce judgment.
 

 DECREE
 

 At the cost of appellant, Richard Colon, the judgment is AFFIRMED.
 

 [1]
 

 . If he entertained any doubts relative to her capacity to seek a divorce, he kept these thoughts to himself,
 

 [2]
 

 . The 30-month physical separation, without reconciliation, is not disputed.
 

 [3]
 

 . This would satisfy the requirements of
 
 Adams
 
 v.
 
 Adams,
 
 408 So.2d 1322 (La.1982).